FREDERICK Fox, administrator, with the will annexed, of the estate of Samuel Rumery, *vs.* WILLIAM RUMERY *et als.*

Cumberland.    Decided April 1, 1878.

*Will.    Acceleration of remainders.*

A remainder taking effect after a life estate is accelerated by any cause which removes the prior life estate out of the way.

The testator by will gave his wife, in lieu of dower, one-half of his property, real and personal, for her life, with power to sell and make such reinvestments as she deemed expedient, with a devise over to his adopted son. *Held*, a gift to the wife of only a life estate with power of alienation for reinvestment only, and a valid devise over both as to real and personal estate.

Where, in the same case, the wife waived the provisions in the will and accepted dower and allowance instead, *Held*, that the devise over was not thereby abrogated; that the effect as to the surplus was the extinction of the widow's life estate therein and the acceleration of the rights of the second taker.

BILL IN EQUITY, asking the construction of the will of Samuel Rumery, of Westbrook, who died March 12, 1873, without issue, leaving property, real and personal, amounting to $248,236.25, disposed of by will dated May 7, 1867, containing six items.

The first provides for payment of debts and funeral expenses.

The second gives $10,000, in five shares of $2000 each, to his father, brother, sister and representatives of deceased sisters, each

share in case of no surviving representative to be divided among the others, conditioned substantially on his leaving an estate of $40,000.

The third gives to his wife, Rachel Ann Rumery, in lieu of dower, one-half of his remaining estate, real, personal or mixed, for and during her life, and closes thus: " Granting her full power and authority to sell, transfer, assign and convey each and every part and parcel of said half part, whether real or personal, by sufficient deeds and guaranties, according to her own judgment, will or pleasure, and with the right to select from my estate, after a just and lawful appraisal, the half part in value, whether real, personal or mixed, which she may choose and prefer, and make such reinvestments of the proceeds of any such sales or transfers as she may deem expedient; and after her decease, should my adopted son, Samuel Dayton Rumery, survive her, I give, bequeath and devise all the then existing remainder of said half part, to the trustee hereinafter provided, for the uses and trusts, intents and purposes, and to be disposed of in precisely the same manner as is hereinafter provided in the fourth or immediately succeeding article or paragraph."

The fourth names William Henry Dennett, a relative by marriage, trustee of the property left, after his wife's selection, for the use of his adopted son, Samuel Dayton Rumery, with specific and particular directions; on his death with children, they to represent him; if without children, then his share to go to the widow of the testator.

The fifth, in the event of the death of his wife and adopted son without issue, gives the remainder to his lawful heirs.

The sixth names his wife executrix.

The widow waived her rights under the will, received her dower in real estate inventoried at $31,875, and an allowance of $100,000 from the personal estate. She declined to act as executrix and the plaintiff was appointed administrator with the will annexed. Dennett declined to act as trustee, and Edward A. Noyes was appointed in his stead.

The administrator submitted several questions to the law court, but the answer to the first renders it unnecessary to state the

others. The first relates to the disposition of the overplus of the estate after the payment of the $10,000 legacy, one-half of the residue to the trustee for the adopted son, the allowance to the widow, the debts and the expenses of administration. The inquiry is, whether it should go to the heirs or to the trustee.

*N. Webb*, for the trustee and *cestui que trust*, contended that it was the manifest intention of the testator to dispose of his whole estate by will, and that he had done so.

*B. Bradbury*, for the heirs, admitting that such was his intention, contended that the devise and bequest of real and personal property to the wife with power to sell amounted to a gift of the personal and of the fee in the real estate, but that her unforeseen action in waiving the provision of a life interest of about one-half the estate under the will and in accepting dower in one-third of the realty and an allowance of $100,000 of the personal had left a portion of both real and personal estate undisposed of, which by law should go to the heirs; and that, even if his first position was not tenable, they were entitled to a life interest. [Reporter's note. See *Blatchford* v. *Newberry.* The Reporter, vol. 6, p. 265.]

*N. Webb*, in reply. The power to sell and reinvest is not in law a right-out gift. True, the widow has waived provisions under the will so far as they are in her favor ; she has no power to waive provisions in favor of the other legatee and devisee. In case of her death before his, the property was all to be his; her waiver extinguished her rights, and accelerated his in so much of it as was not included in her allowance.

BARROWS, J. What was the testator's intention ? Are the terms of his will such that we can give effect to that intention consistently with the rules of law ? These are the fundamental inquiries, upon the answers to which the rights and duties of these parties depend.

His heirs at law claim that, by reason of his widow's refusal to accept the provision made for her by the will, that portion of the estate given to her therein in lieu of dower remains undis-

posed of by the testator, and what is left of it, after deducting the sum allowed her by the probate judge, under R. S., c. 65, § 21, descends to them subject to her right of dower in the realty, and that the trustee for the adopted son can take nothing under the will except the moiety devised to him by the fourth item; in other words, that by reason of the widow's election to take her dower and allowance, the third item of the will becomes entirely inoperative, and so much of the estate as the testator therein attempts to dispose of must descend in the same manner and to the same persons as if the estate were intestate.

To reach this result it is claimed, in behalf of the heirs, that the entire interest and estate in that moiety of the property, devised in the third item to the wife of the testator, was vested in her by the terms used, and nothing remained to pass under that item to the trustee in any event, whether the wife accepted or rejected the provision in the will. In brief, the claim is, that upon a proper construction of the third item, one-half of the property, real and personal, not previously disposed of, to be selected by her, in value according to the appraisal, was given absolutely to the wife, and not being accepted by her, is left to be disposed of according to law under the statutes regulating the descent and distribution of intestate estates.

It is unquestionably true that if the devise of an estate be rejected by the devisee, and there be no other disposition of the estate in the will, it will descend to the heirs at law. *Bugbee* v. *Sargent*, 23 Maine, 269.

That this result would be contrary to the intention of the testator here is obvious, and is substantially admitted by the learned counsel for the heirs when he claims that the testator "did not imagine that his wife would renounce the provisions of the will, and so made no provision for that contingency."

It would indeed be difficult to imagine why she should renounce the provisions made for her in the will if the construction which the counsel seeks to give it could prevail. Is it the true construction?

Judge Redfield, in his treatise on Wills, Part II, c. 13, Sect. 6, § 48, remarks: "The courts have for a long time inclined very

decidedly against adopting any construction of wills which would result in partial intestacy, unless absolutely forced upon them. This has been done partly as a rule of policy, perhaps, but mainly as one calculated to carry into effect the presumed intention of the testator."

In the interpretation of any particular clause in a will, we are to give effect to the intention of the testator as manifest from an examination of the whole will, when not inconsistent with the rules of law. The clause is to be considered in connection with all the others, and with the main design of the testator, and such a construction adopted if possible, as will give effect to the whole and to the general intent, although thereby some departure from a literal construction of the clause in question may be necessary. *Morton* v. *Barrett,* 22 Maine, 257. We observe, in the first place, that by the second item in his will the testator makes a certain provision for his heirs at law, coupled with certain conditions, limited in amount "not to exceed in any event the sum of ten thousand dollars," carefully divided, with elaborate directions for distribution among the survivors in case of the decease of any of the beneficiaries named in the item.

It is plain that this was the extent of the intended bounty in that quarter, except in a certain contingency to be hereafter noticed. If the heirs at law are entitled to more, it is in opposition to the purpose of the testator expressly declared. The bulk of his fortune was to go for the use and benefit of his wife and adopted son, under certain limitations and restrictions.

And what was thus given to the wife and adopted son respectively, in case of the death of either, was to enure to the benefit of the other. Only "in the event of the decease of my wife Rachel Ann, and adopted son Samuel, without lawful issue, and the termination of the estates herein created," was the remainder to go to his lawful heirs.

That the courts have carefully refrained from permitting the wife's election to affect the testamentary dispositions made by the husband, beyond what necessarily results from the wife's exercise of her paramount right, may be seen by a reference to *Perkins* v. *Little,* 1 Maine, 148, 152, where the wife's right under the stat-

utes then existing was confined to her dower in the realty, and to
personalty not disposed of by the will.   It was enlarged by giving
the judge of probate discretionary power over the personalty gen-
erally, by c. 180, laws of 1835.   But the idea still lingered that
the amount of property undisposed of by the will was a matter to
be considered in the exercise of the probate judge's discretionary
power.   See remarks of Wells, J., in *Hastings* v. *Clifford,* 32
Maine, 132, 136.

It is certain 'that her election cannot be held to affect the dispo-
sition of any actual subsisting remainder of the property devised
to her, beyond what results from the exercise of the discretionary
power now confided to the judge of probate to make her an
allowance as if the husband had died intestate.   The claim made
by the heirs can prevail only by establishing the proposition that
the third item of the will must be construed as passing to the wife
the entire property and control of the moiety therein devised to
her.   Otherwise, the wife's election of dower and allowance can-
not defeat the remainder therein given to the trustee for the
adopted son.

To support his construction, the counsel for the heirs calls
attention to the right given her in this third item, to select the
half of the estate, after an appraisal, " whether real, personal or
mixed, which she may choose and prefer," and the " full power
and authority to sell, transfer, assign and convey each and every
part or parcel of said half part, whether real or personal, by
sufficient deeds and guaranties according to her own judgment,
will and pleasure ; " and he relies upon the cases of *Ramsdell* v.
*Ramsdell,* 21 Maine, 288, 293, and *Pickering* v. *Langdon,* 22
Maine, 413, as clearly establishing the doctrine that such absolute
power of disposal in the first taker will render the devise over
inoperative.   This is true ; but to reach the conclusion which he
seeks, we must overlook the equally clear provisions in this item
that the property is given to her " for her use, benefit and advan-
tage, for and during her life," and that the power of disposal is
apparently for the limited purpose of enabling her to " make such
reinvestments of the proceeds of any such sales or transfers as
she may deem expedient."

Taking all the provisions together, as we are bound to do, we think that under this item the wife would take only the use and income during her life of the moiety which she might select at the appraisal, and that the power of disposal was given to her for the limited purpose of reinvestment in that which might promise an increase of income without exposing herself or her estate to liability for any loss that might accrue from an unwise or unfortunate change of the investment. The authority to " make such reinvestments of the proceeds of any such sales or transfers as she may deem expedient " was needless if the fee in the realty and the absolute dominion of the personalty had been given, and the existence of such a provision is not reconcilable with such a design on the part of the testator. Coupled as it is with the power of disposal, it gives emphasis to the limitation to her of the " use, benefit and advantage, for and during her life," and goes far to make it certain that, while he designed she should control the management of her moiety during her life, free from liability for the consequences of mistake in such management, it was the use and income only which was to be hers, and the rest was to go at her decease to the trustee for the adopted son.

Nor does it make any practical difference with regard to the construction that a large part of this moiety was in personal estate. While it is true, as stated by Chancellor Kent, vol. II, p. 352, 4th Ed., that formerly, at common law, the doctrine was that there could be no limitation over of a chattel but a gift for life carried the absolute interest, it was long ago settled that a gift of a chattel for life was a gift of the use only, and the remainder over was good as an executory devise. Kent's Com. *ubi supra*, and cases there cited in notes. *Field* v. *Hitchcock*, 17 Pick. 182. *Homer* v. *Shelton*, 2 Met. 194.

It is to be regretted that the courts ever thought it necessary to transfer the terms " remainder and executory devise " from their original application to real property to provisions respecting personal property. Owing to the different nature of the subject, the analogy will seldom if ever be perfect, and in some respects will always be absolutely defective. Yet the transmutation has encumbered the attempts of judges to give a reasonable operation

to testamentary dispositions respecting the personalty to an inconvenient extent, and we admire their ingenious efforts to give effect to the testator's intentions consistently with the technicalities thus needlessly imported, much as we should the labored performance of a dancer in fetters—for the agility displayed, rather than for the grace of the movement.

And sometimes, while they recognize a legitimate intention of the testator, their best efforts fail to extricate it from an entanglement of technicalities which have no proper application, so as to give it its just effect. It would be much simpler to recognize the essential distinction between a remainder in real estate and a remainder of personal property, and to determine where and to what extent a bequest of an interest *in futuro* in the latter could be regarded as lawful and protected, if we were untrammeled by the refinements and subtleties which have grown up about the ownership and tenure of real estate.

But perhaps at this day it would be too sweeping a change to discard the terms so long used, and it may be that if we keep the cardinal object of inquiry, the legitimate intention of the testator, carefully in view, the obstacles to a satisfactory conclusion will commonly be found fewer than might be anticipated.

Suffice it, in the present case, to say that, giving their due force to all the clauses and provisions of the third item, the interest given to the wife in her moiety was for life only, with special power of alienation for the purpose of changing the investment only, and that this is consistent with a valid devise and bequest over to the trustee for the adopted son, and brings the case within the exception to the general rule, which is expressly recognized in *Ramsdell* v. *Ramsdell*, 21 Maine, 288, 295, as follows: "Where a life estate only is clearly given to the first taker, with an express power, on a certain event or for a certain purpose, to dispose of the property, the life estate is not by such a power enlarged to a fee, or absolute right; and the devise over will be good." See, also, *McLellan* v. *Turner*, 15 Maine, 436. *Shaw* v. *Hussey*, 41 Maine, 495. *Willing* v. *Baine*, 3 Peere Williams, 113. *Walker* v. *Main*, 1 Jac. & Walker, 1. *Humphreys* v. *Howes*, 1 Russ. & Mylne, 639. *Morris* v. *Belyea*, 13 N. Y. 273.

The devise over to the trustee, being valid and effective, cannot be treated as expunged by the wife's rejection of the life estate given her in the third item, so as to leave any portion of her moiety undisposed of by the will. The effect thereby produced is that the wife takes her dower in the realty, and one hundred thousand dollars allowed her by the judge of probate, leaving the remainder of that moiety to pass, under the provisions of the will, to the trustee for the adopted son. That remainder is, to all practical intents and purposes, what is spoken of by the testator in the third item as being at the decease of his wife "the then existing remainder of said half part."

All the wife's interest in it is at an end as much as if she were dead. The rule is that the extinction of the first interest carved out of the estate only accelerates the right of the second taker. *Taylor* v. *Wendel*, 4 Bradford Sur. Rep. 325. This is the only disposition of this surplus of the wife's moiety which is consistent with the testator's declared will. He could not control his wife's right to prefer her dower and allowance to the life estate which he gave her, nor could she by exercising that right abrogate the disposition which he had made of any surplus of the estate after satisfying her legal claims.

Thus, in *Adams* v. *Gillespie*, 2 Jones Eq., N. C. 244, where a testator gave personal property to his wife for her life, and after her decease to his daughter for her life, and then to the daughter's children, and the wife rejected the provision for her in the will, it was held that the bequest to the daughter took effect immediately.

In *Firth* v. *Denny*, 2 Allen, 468, 470, Merrick, J., speaking of the renunciation by the wife of testamentary provisions in her favor, says: "But this renunciation annulled only those provisions in the will in which she had a personal interest. It could not revoke or invalidate the bequests to other legatees, nor in any way affect them except by causing a diminution of the remaining part of the estate out of which they were to be paid."

In *Plympton* v. *Plympton*, 6 Allen, 178, also, the obvious propriety of giving full effect to bequests to other legatees in case of renunciation by the widow, so far as any estate remains from which such bequests can be paid, is recognized.

One unavoidable result of the election of dower and allowance by the widow in the present case is to take from the trustee for the adopted son absolutely the remainder devised to him in the third item to the extent of the allowance, which by force of law and the action of the judge of probate has now become the property of Rachel Ann Rumery. Due regard for the testator's disposition of his property requires that, so far as this loss can be made up by an earlier reception of the surplus remaining after setting out the dower and paying the allowance, (her life estate in which surplus the widow rejects) the partial compensation for the ultimate diminution shall be afforded. It is this remainder alone which is impaired by the widow's election. The legacies to the testator's kindred are not diminished by the substitution of dower and allowance for the life estate given to the widow, but are paid in full. Thus, they, experiencing no loss, have no claim for reimbursement out of what is left from the estate renounced. Nor is their contingent interest under item five, which is there made dependent upon the death of the widow and adopted son without lawful issue, in any manner endangered or impaired if we allow this surplus to pass at once to the trustee, for it is to be held by him upon the specific trusts declared, and in case of the death of the adopted son without lawful issue before he arrives at the age of thirty-five years, they would be entitled to all that may have been added to the trust fund by making over to it what the wife has renounced. And it is only in that contingency that the testator intended they should receive any benefit from the estate beyond the specific legacies in the second item.

Holding as we do, that the waiver by the wife of the provisions of the will in her favor, and the subsequent reception of her dower and allowance, operates upon the excess of that half of the estate as her death would have done in case she had accepted what was given her by the will, and that these proceedings exactly define the existing remainder, which under the third item was to go to the trustee, we give effect to all the provisions of the will as nearly as may be under the new condition of things brought about by the wife's election.

We accordingly answer the first question propounded in the

bill as follows : Edward A. Noyes, as trustee under the will, is entitled to the entire realty, subject to the dower set out to the widow, and he is also entitled to the balance of the personal property which may remain in the hands of the administrator, after the payment of the balance of the allowance and all legal debts and expenses of administration, to be disposed of upon and according to the trusts declared in the will, and the heirs at law are entitled to no part thereof ; and this answer necessarily disposes of all the remaining questions.

> *Decree accordingly.*
> *Costs and reasonable expenses of all parties, for counsel fees or otherwise, in this proceeding to be paid out of the estate, and charged by the administrator in his account.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.