Lawrence, J.
Lcander Sarles died at the city of New York on February 20, 18S3, leaving a last will and testament which was duly admitted to probate March 12, 1883. He left four children, Mary E., Lcander H'. and Susan A., the children of a former wife, and Alice G., a child by his second avife, Lizzie Sarles, one of the plaintiffs in this action. By his will he bequeathed to his widow', absolutely, certain household furniture and stocks and other specific personal property, and devised to her the house No. 212 East Thirteentli street during her natural life or as long as she should remain his widow, with the remainder to his daughter Alice G. Sarles upon the death or remarriage of her mother, if then living ; and if not to her next of kin. , The third clause of said will is as follows:
“I give, devise and bequeath unto my daughter Mary Emma Sarles, the house and lot No. 304 East Thirty-fifth *324 street in the city of New York, twenty-five shares of the capital stock of the North and East River Railroad Company (commonly called the Belt- Railroad Company) and six shares of the Second Avenue Railroad Company, in trust, to receive the rents and income thereof and apply the same to the use of my said wife semi-annually during her life or widowhood, and upon her death or remarriage to the use of my said daughter, Alice Green, during her life, and on her death to sell the same and convert the said real estate and stock into money and pay the proceeds, thereof to the next of kin of the said Alice Green, in equal shares.”
The testator also gave to his wife certain real property and stocks in trust to receive the income and profits, and apply the same to the use of his daughter Mary E. during life, and the remainder to her next of kin.
The testator also gave to Henry H. Haight certain real property and specified stocks under a similar trust for the benefit of his son Leander H. Sarles, and also other real and personal property to said Leander II. Sarles upon a similar trust for the benefit of the testator’s daughter Susan A.
The provisions in favor of the wife contained in the will wore stated to be in lieu and bar of' dower. The widow-declined to accept the provisions of the will in lieu of her dower, and filed a petition in the Supreme Court for the admeasurement thereof, and the proceedings resulted in a decree fixing the sum of $3,000 as the yearly value of her dowmr interest and directing the sum to be paid to her in equal monthly instalments during her natural life, and awarding her the sum of $3,483.33 as damages for the withholding of her said dower, and adjudging that the sum so to be paid be and remain a charge upon the real estate of which the testator died seized. By consent of parties the premises No. 212 East Thirteenth street were sold, and out of the proceeds $2,493.58 was paid to the widow in gross for her dower therein, and the balance, $9,358.81, was directed to be deposited in the Central Trust Company, the *325 income thereof to be paid to Lizzie Sarles, as the guardian of Alice Gr. Sarles,. during her minority, and upon her majority to pay over the same to Alice Gr. Sarles.
This action is brought to obtain a construction of the third clause of the will above set forth, it being claimed by the plaintiffs that the defendant Mary E. Sarles has neglected arid refused to apply two-thirds of the rent and income of said house and lot, and all the income of said stock, or any part thereof, in excess of one-sixth of the income of said house and lot, and one-fourth of the income of said stock, and has appropriated one-third thereof to the plaintiff Lizzie Sarles for her right of dower in said premises, one-sixth to the use of the plaintiff Alice G. Sarles, and one-sixth to the use of each of the other children of the said testator, and has appropriated one-fourth of the income of said stock to the use of each of the four children of the said testator.
The plaintiffs pray for an accounting by the said defendant Mary Emma' Sarles, as trustee of said income, and for an appropriation of two-tliirds of the net income of said house and lot, and of the whole of the income of said stock as received by her to the use of the said Alice G. Sarles. It is claimed by the plaintiffs that the widow having made her election, her whole interest under the will became forfeited, and that the remainder in fee to Alice in the Thirteenth street house devised by article two of the will to the widow for life, with remainder to Alice, vested in possession, and that the beneficial interest of Alice in the trust of the Thirty-fifth street house mentioned in article third of said will, as well as the income of the stocks therein mentioned, devolved upon Alice for life, with the remainder to her next of kin. Bv the will the wife and the four children were made residuary devisees and legatees of the testator.
It is conceded by the defendants that the interest in remainder created by the second and third subdivisions of the will, in favor of the defendant’s daughter Alice, did not *326 lapse by the widow’s rejection of the provisions in lieu of her dower, and that the same became accelerated and immediately vested in said daughter and her trustee. But it is further claimed that the gift to Alice is equitably chargeable, to the extent that it is increased by the widow’s election, with the amount charged upon the rest of the estate for the satisfaction of the widow’s dower. In support of this claim the doctrine of election and satisfaction, or compensation, as it has been determined by the courts of England and in the United States, is invoked, and numerous cases are cited by the defendants to sustain their position. The case of McCallister v. Brand’s heirs (11 B. Mon. Ky. 370) is relied upon among others.
In that case the court held that the renunciation of a testamentary provision by a widow is in effect and substantially a transfer or surrender to her rights in it, to the heirs or devisees of her husband, in consideration of which she becomes absolutely entitled to the legal provisions from them. In Gallagher’s Appeal (87 Penn. St. 200), a testator devised certain lands to his sister, and after making provision for his widow left his remaining estate to his nephews and nieces. The widow having refused to take under the will, it was held that the sister was entitled to have the assets marshaled and a sum set apart sufficient to relieve the land devised to her from its burthen of the widow’s interest.
In Sandoe’s Appeal (15 P. F. Smith, Penn. 314), it was held, that where a widow elects not to take under a will, her rejected devises aud bequests are a trust in her for the benefit of the “ disappointed ” claimants, to the amount of- their interest therein, and that a court of equity will sequester the benefit intended for the wife to secure compensation to those who are disappointed by her election.
In Firth v. Denny (2 Allen, Mass. 468), the testator after making various devises and bequests, directed $9,000 to be invested, and the income to be paid to his widow for life and on her death to be distributed among certain lega *327 tees. The rest of his estate was to go to his residuary legatees. The widow waived the provisions of the will, which waiver increased her si rare in the estate. In a suit brought by the executors for directions as to the proper disposal of the §9,000, the court held that as the widow’s election had - caused a loss to the residuary legatees, the §9,000 did not go to the remainderman but that the same should be retained by the executors during the life of the widow, and that the entire income should go to the residuary legatees whoso legacies had been impaired by her election.
The same doctrine was assorted in the cases of Dean v. Hart (62 Ala. 308); Worth v. McNeil (4 Jones Eq. N. C. 272); McReynolds v. Counts (9 Gratt. Va. 242); but it seems to be conceded by the counsel on both sides, who have been most industrious in their search for authorities in this case, that there is no reported case in this State in which the doctrine relied upon by the defendants has been applied, excepting the ease of Havens v. Sackett (15 N. Y. 365, 369), where, r«s the defendant’s counsel claims, Judge Denio, in delivering the opinion of the court, recognizes the existence of the rule invoked by the defendants. That case, however, seems to have been one of a class quito numerous in the reports, in which it was claimed that a testator had bequeathed property belonging to another, and had also made the owner of the property a legatee or devisee under the will. The court recognized the rule that the legatee or devisee if he accepts the benefit under the will must also make good the testator’s attempted disposition, and says, that if he insists on retaining the property which the testator has attempted to give to another, equity will appropriate the gift made to him for the purpose of making satisfaction out of it to the person whom he has disappointed by the assertion of his rights. The facts in that case were however very different from those now presented, and it cannot be regarded as disposing of this case.
The latest case to which I liavo boon referred by the defendants’ counsel is that of Bigham’s Appeal (6 Central *328 Rep. 118), wherein the supreme court of the State of Pennsylvania adopting the opinion of the court below, held that in a proceeding to have the benefits in the real estate of a testator devised to his widow sequestered to compensate i a disappointed annuitant and disappointed legatees, thcboni efits intended for the widow in the realty should be sequesi tered." In that case the testator devised and bequeathed to his wife his real estate and all his personalty (except legacies amounting to $3,000) for life, subject to the payment to his sister of an annuity of $300 per annum during the life of his widow, and subject to the life estate in his wife, he devised his real estate to the appellant Bigham. He • also bequeathed $4,000 of legacies payable at the widow’s' death, and one-half of his personalty to his sister, and the ■ other one-half to the children of a deceased brother. The widow refused to take under the will, and the amount of legacies payable at the widow’s death having been sequestered to pay the income to the sister on account of her annuity, and the income from said fund not being sufficient to pay said annuity, the sister and the residuary legatees prayed that the benefits intended for the widow in the real estate might be sequestered to compensate the sister as a disappointed annuitant, and the residuary legatees as disappointed legatees. Upon this state of facts the court held, as above stated, that the sequestration should be made. Some of the cases above referred to were cited in the opinion of the court in that case, and in addition to those cases the learned court refers to Van Dyke’s Appeal (60 Penn. St. 481), and Re Barklay Estate (10 Penn. St. 387, 390).
As has already been stated, the learned counsel have not referred me to any case in this State adjudging the precise point which is herein presented, but the doctrine laid down in the cases referred to from the reports of btlier States, in the absence of any authority to the contrary, is entitled to great weight in disposing of this case, particularly as it is also in accord with the decisions of the English courts (See Pemb. on Judgm. 3 ed., Lond. 1882, p. 204, and *329 cases cited; Gretton v. Hayward, 1 Sim. 409; Rogers v. Jones, 3 Ch. D. 688; Pickersgill v. Rodgers, 5 Ch. D. 163-173).
The role is also stated very clearly in Story's Eq. Jur. pages 415 to 465, 13 ed.; Pomeroy's Eq. Jur. § 1083; Lomax on Exec. 2 ed. 1857, 349, §§ 467-470.
I am therefore of the opinion that the defendants, Mary E. Sarles, Leander II. Sarles and Susan A. Sarlcs, are entitled to be compensated out of the real estate by the will devised for the benefit of the plaintiff, Lizzie Sarlcs, to the extent to which the burthen upon the property specifically devised to them, or for their benefit, has been increased by the widow’s election, unless there is something in the proceeding heretofore taken in this court for the admeasurement of the widow’s dower, or for the sale of the infant’s real estate, which renders this question res adjudioata as between the parties to this action, and precludes the appii- • cation of the rule which seems to be so well established in equity.
It is urged that in the decree for the admeasurement of the widow’s dower, the sum thereby ascertained to be the value thereof is made a charge upop all the real property left by the testator, and that therefore it is not within the power of the court now to impose a larger burden upon one part of said property than another in consequence of the widow’s election. But such is not the result of that proceeding and of the decree made thereon. That proceeding was brought by the widow under the provisions of the Bcvised Statutes, and no question as to any equitable rights which might have existed between the heirs-at-law ’as between themselves could then be considered. Necessarily the result of that proceeding was to declare that the widow was entitled to her dower in all the lands of which her husband died seized. As to what right might exist between the heirs at-law in consequence of the widow’s having refused to accept, the provisions of the will as between themselves, the court .was not called upon to pronounce *330 judgment, nor had it authority in that proceeding to do so. The simple question there was: Is the widow entitled to dower? Can a certain portion of the real estate left by her husband be set aside to satisfy her claim of dower? And is it for the best interest of the parties so to do, and what is the value of the widow’s dower right ? Those questions could be and neceosarily would be determined without ascertaining whether the parties upon whose lands the widow’s dower became a burden had any special equity as between themselves, which a court of equity would recognize and enforce.
The proceeding for the sale of the premises No. 212 East Thirteenth street was a special statutory proceeding, to ■which neither Mary Sarles nor Leander II. Sarles in his individual right were parties, nor was the question determined in that proceeding whether the infant’s share in that property in consequence of equities existing against it (in addition to the burthen of the mother’s dower which it would necessarily bear) should also make compensation to the other devisees for the increased burthen which the rejection by the widow of the provisions of the will had ' thrown upon their hands. The question could not be litigated in that proceeding, and, as between the parties then before the court, after the payment of the widow’s dower, the surplus of the proceeds remaining belonged to the infant Alice. It was not ascertained whether Alice's share was equitably chargeable with compensation to the other heirs at law.
I have examined with great care the exceedingly instructive and able briefs which have been filed by the counsel in this case, and I have not overlooked the fact so much relied upon by the plaintiff’s counsel, that it cannot be supposed that the testator contemplated the defeat of his provision for the child Alice as the effect of the possible election of the widow, nor that lie could have imagined that the youngest and most helpless child would be the only one who, during her mother’s life, in consequence of such election, would *331 be deprived of all benefits under the will. But the answer to this seems to be, that the testator must be presumed to have known not only that his wife could claim her dower interest, but also what the legal effect would be of her rejecting the provisions of the will. I think, too, that the identity of interest between the mother and the child is a strong argument to show that the testator did not intend to bestow upon a mother and child so identified the portion of the estate he had set apart for them, in addition to the wife’s dower therein, in case she rejected the provisions of the will. It is also an answer to this proposition to say, that by the will the provisions in Alice’s favor are not to take effect until the death or re-marriage of the mother, neither of which events has happened, and that, therefore, the provisions in her favor will not be interfered with or postponed, by allowing compensation to the other “ disappointed ” heirs at law. Again, the testator being presumed to have known what the effect of his wife’s rejection of the provisions of the will would be, must have also contemplated the effect of such rejection upon the fortunes of her child.
I am therefore of the opinion that the defendant’s position in this case is correct; that the property described in the third clause of the will is equitably chargeable with such sums as may be shown to be necessary to compensate the children of the testator,'upon whose lands the dower of the plaintiff Lizzie has become a burthen, for such additional burthen. That amount can be ascertained either by a reference or by proofs to be taken before me at the October special term, as the parties may agree.
Bindings may be prepared in accordance with these views.
Note on Acceleration of Gift in Remainder and Compensation to Those at Whose Expense the Acceleration is Made.
I. Acceleration of gift.
The general current of authority supports the proposition conceded in the case in the text, that where the widow rejects a life estate given *332 in lieu of dower the remainder limited thereon does not lapse, but is accelerated and vests at once in the- devisee or legatee.
One o'f the earliest cases on this point in this State is that of Hawley v. James, 5 Paige, 318, 324, where the testator James by will devised to his wife the mansion-house for her life, “ with power to dispose of the same by will, to our lineal descendants, in such manner as she may think proper gave to his wife also for her own support and for the education and support of their children, an annuity of §3,000, during her life. And by the succeeding fifth clause of the will, he gave to his wife $3,000, “ to be applied by her towards the maintenance, education and the advancement of the children of her deceased sister, Jeannette B. Gourley, in such proportions and at such times as she may deem proper;" and “ the foregoing devise and bequests ” to his wife were expressly stated to be intended in lieu of her dower in-his estate. The widow having elected to take her dower, held, that this did not defeat the provision in the fifth clause of the will for the Gourley children. ,
The chancellor said: “ The legacy for the support and education of the Gourley children was one in which the widow had no personal interest; and was not, therefore, a pecuniary or other provision made for her by the will, which would have barred her right of dower in the lands of her husband, if she had consented to accept and execute the trusts specified in the will. To constitute a case of election under the Revised Statutes, the jointure, or other provision made for the wife in lieu of dower, must be one in which she is to have some beneficial interest (1 R. S. 741, §§ 11, 12, 13). A mere power in trust for the sole benefit of others is not sufficient; although the husband has an undoubted right to make the interest of the cestui que trust, under the devise of a trust power, .dependent upon the condition that his widow shall elect to take a provision made for her by the will in lieu of her dower. He may make it to depend upon the condition that she relinquishes or releases her right of dower absolutely and without any equivalent. Tlie devise of the mansion-house ■ and appurtenances, * although coupléd with a power to appoint the fee after her death, was intended mainly as a provision for herself in lieu of dower. And as to that I arrived at the conclusion, though with some hesitation, that the interests of her descendants under the trust power, was intended by the testator to be made dependent upon the condition that she accepted of the provisions made for her by the will, in lieu of her dower. But under the fifth clause of the will, the children of Mrs. Gourley, the deceased sister, appear to have been the sole objects of the testator’s bounty, in reference to the $3,000 for their maintenance, education and advancement. And the power of appointment given to the *333 wife, by that clause of the will, like that given to the executors in case of her death by the fourteenth clause, is a mere naked imperative trust power which she is bound to execute if she accepts the trust.
“ Although the intention of the testator in this part of the will is not perfectly clear, I have arrived at the conclusion that he did not intend to make the provision for the support and education of those orphan children, dependent upon the condition of the widow’s relinquishing her right of her dower in his estate. The amount of that legacy must, therefore, be paid over to Mrs. James, as the trustee for those children, according to the directions of the will.”
The appeals (16 Wend. 61) did not involve this point nor unsettle the rule.
Testator bequeathed a fund to executors to purchase a dwelling, to be selected by his wife, and gave her the use of it for life, and directed the executors, after her death, to sell it and pay the proceeds in equal shares to two religious corporations.. This provision, with others he declared to be on condition that she should accept the same in lieu of dower. The wife died before probate of the will and without electing. Held, that as the fund was created for a double purpose, if it vested in the executors as trustees, it vested in them for all the purposes of the trust; and the fact that the widow did not elect to accept in lieu of dower did not defeat the bequest and throw the fund back into the residuary estate. American Bible Socy. v. Hebard, 51 Barb. 552; aif’d in the court of appeals, but not there reported.
In Firth v. Denny, 2 Allen, 468, 470, Merrick, J., speaking of the renunciation by the wife of testamentary provisions in her favor, says ; “ But this renunciation annulled only those provisions in the will in which she had a personal interest. It could not revoke or invalidate the bequest to other legatees, nor in any way affect them except by causing a diminution ortho remaining part of the estate out of which they were to be paid.”
Approved in effect in Fox v. Rumery, 68 Me. 121, 129.
In Plympton v. Plympton, 6 Allen, 178, the obvious propriety of giving full effect to bequests to other legatees in case of renunciation by the widow, so far as any estate remains from which such bequests can be paid, is recognized.
The latter case is also followed in Fox v. Rumery, 68 Me. 121, 129, the court of Maine saying that “ the courts have carefully refrained ir'om permitting the wife’s election to affect the testamentary dispositions made by the husband, beyond what necessarily results from the wife’s exercise of her paramount right.”
This question was determined in the court of appeals of Kentucky in 1887, in a well considered case in which the opinion was delivered *334 by Chief Justice Robertson (Timberlake v. Parish, 5 Dana, 345). Testator gave certain personal property to his wife, adding, “all of which property my said wife is to hold for her own use and benefit during her natural life, and at her death, to descend to her granddaughter, Mary Brand.”
The widow, under the Kentucky statute, renounced this provision ; and the county court allowed her one-third of the estate under the statute. Thereupon, the executor, being of the opinion that the leg-' acy in remainder to Mary Brand had been destroyed by the widow’s renunciation, refused to deliver to Mary Brand any portion of the legacy bequeathed to her, and he contested her- action for the legacy on this ground, which the circuit court sustained, and this raised the main question on appeal.
The court say: “ The fact that the particular estate was not accepted, and therefore did not take effect, did not, per se, destroy the remainder, as it might have done, had the document of title been a deed instead of a will; for not only does the intention generally prevail in a will, but an executory interest may be created by it, without the intervention or support of an intermediate estate. And, therefore, as every distinct legacy or devise, without any expressed motive or object, will bo deemed, in the absence of any intimation to the contrary, in the will, a bounty to each several devisee or legatee, the nonacceptance or forfeiture by one, cannot destroy the separate right of enjoyment by the latter, when his vested interest was made, not to depend upon the former, but only to succeed it.” And the court held itself bound by the facts and the inflexible rules of construction, to presume that, independently of her grandmother’s acceptance or renunciation of the life estate bequeathed to her, Mary Brand was intended to be a legatee, and was entitled to recover her legacy. Timberlake v. Parish, 5 Dana, 345.
The same principle was involved in the case of Armstrong v. Parks, 9 Humph. (Tenn.) 195. In that case the testator, among other things devised a house and lot, and set apart $20,000 for the use and benefit of his wife, during her natural life, and at her death the proceeds of the house and lot, the principal sum of $20,000, and other funds were to be mingled in one fund for other legatees. The widow dissented; rind one of the questions was, whether the bequests in favor of the widow were to be treated as undisposed of property, or passed at once to the devisees, under the will. The court, TuBMsy, J., delivering the opinion, said : “We think that, inasmuch as she has dissented from the will, all the property devised to her, as well as that which is specific, as her annuity, of $1,000 a year during her life, falls back to the estate ; and that the fund of $20,000, directed by the will to be set apart by *335 the testator’s executors, out of which to pay the annuity, remains an integral part of the estate not to be charged with the annuity; that the object for which it was solely created, having failed by the dissent of the widow, as completely as it could have failed by her death without such dissent, this fund cannot, and ought not, to be separated from the estate, but must be left to pass under the will, as other portions of the estate, after the widow’s right to dower, and her distributive share, are satisfied.”
In Dean v. Hart, 62 Ala. 308, the bequest was of the entire estate to the widow and infant daughter jointly, on the death of either, the survivor to take the whole, and on the death of both, remainder to the legal heirs of the daughter. The widow being compelled by the local statute to elect, dissented from the will, and elected to take her dower and distributive share, as in case of intestacy. The probate court sustained the claim of the next of kin, that the infant daughter was entitled to one-half only, and that they were entitled to the residue after deducting the widow’s share. This decision was reversed.
The court say : “ The effect of her dissent is simply to annul the provisions of the will in her favor,—to blot them out, and leave them as if from death or any other cause, she had become incapable of talcing. The statute docs not contemplate that it shall in any other respect di.-appoint and nullify the arrangements of the will, destroy the rights it confers, or that it shall create new and distinct rights in those who are strangers to the will. The whole purpose of the statute is accomplished when she obtains that which the law would have given her if her husband had died intestate. Whatever she renounces of necessity results to the indemnity of those who are injured by her renunciation (2 Lomax on Ex'rs, 349 ; McReynolds v. Conts, 9 Gratt. 242).” Dean v. Hart, 62 Ala. 308.
A case to the contrary of the rule above stated, and perhaps the only one, is Dale v. Bartley, 58 Ind. 101. In that case a testator, leaving no parent or child, died, bequeathing to his widow absolutely all of his personalty, and also certain real estate during her life. His will provided that, after her death, his executor should sell such realty, and divide the proceeds thereof, in specified portions, among certain legatees named. The widow having elected to take under the law, instead of under the will, the executor, during her lifetime, petitioned the proper court for an order to sell such realty for the payment of such legacies, alleging the personalty to be insufficient to realize the required amount. On demurrer to. the petition the court were of opinion that the widow’s rejection of the will entitled her to take as if testator died intestate, and the executors could not sell during her life, *336 under a power to "sell to pay legacies which the will gave to be exercised after her death. They accordingly
Held, 1. That, at least as far as relates to the realty, the/ widow must be held to have rejected the will entirely.
2. That she took one-third of the land in fee.
3. That, as to the title to the remaining two-thirds, during her life, the testator died intestate, leaving it undisposed of, and that, under section 2G of the statute .of descents, she was entitled to such two-thirds during her life.
4. That, during her lifetime, no part of such realty could be sold by the executor for the payment of such legacies. Dale v. Bartley, 58 Ind. 101.
■ A remainder so accelerated takes effect immediately on the widow’s rejection of the life estate.
A remainder taking effect after a life estate is accelerated by any cause which removes the prior life estate out of the way. In Fox v. Rumery (a well considered case), where a testator gave his wife, in lieu of dower, oné-half of his property, real and personal, for her life, with power to sell and reinvest as she deemed expedient, and a devise over to his adopted son. She waived the will and accepted dower and allowance instead. Held :
• 1. That the devise over was valid both as to real and personal estate. .
2. That the effect of her waiver was the extinction of her life estate, and the acceleration of the rights of the second taker. Fox v. Rumery, 68 Me. 121.
In Waddle v. Terry, 4 Coldw. (Term.) 51, it appeared that the testator bequeathed all his property, real and personal, to his widow and son, one-half to his widow for life, and in case of her death before the son, the whole estate to go to the son ; but if the son should die a minor and without issue, then, after the life-estate of the wife, to the brothers and sisters of the testator. The Tennessee statute gave the widow the right to elect; and if she failed to do so, held her bound by the will. She dissented in due time from the provisions of the will, and the son died during his minority without issue. Held, that, by her dissent, tide widow could not claim any thing under the provisions of the will, and the estate in remainder became vested to the brothers and sisters, the beneficial use and enjoyment to take immedi-. ate effect, but subject to the widow’s right of dower and distribution.
This doctrine has also been fully recognized in New Hampshire, in the case of Yeaton v. Roberts, 8 Foster, 459. The will contained this clause : “ I give to my beloved wife, Mary Yeaton, the use of all the rest and residue of my estate, real, .personal, or mixed, wherever the *337 same may be lying or being, situated, or found, to her, for and during her natural life, and no longer; and then to descend and go to the children of said Oliver Yeaton, and to the children of said Leavitt II. Yeaton, and such other children as they may have, in equal shares, in fee.”
The widow, soon after testator’s death waived the provision in her favor, and claimed and received her dower and distributive share.
The question was, the court say, “ whether, upon the refusal of Mary Yeaton to take the life estate, the ulterior limitation took effect in possession, or awaited the death, passing, in the meantime, as undevised estate, to the heir, according to the claim of some of the defendants in this suit. An estate in remainder, vests in possession immediately on the termination of the life estate, upon which it is limited', by the death of the tenant for life, as by the surrender or forfeiture of his estate. It is also well settled, that, when there is a devise—a legacy to two in succession—and it fails as to the first, for cause that would, but ^ . l ' 1 for the gift over, create a lapse, the next in succession, or remainder, shall take it. 2 Fonbl. 366, 7 n; Toller Ex. 237; Com. Dig, Devise K.; Ram on Wills, 263 ; Goodright v. Opee, 8 Mod. 126.
“Whether, therefore, we treat the devise to Mary Yeaton, as having lapsed by her refusal to take it, according to the decisions-in-the like case (Hawley v. Jones, 5 Paige Ch. 418), or according to.the case put by Coke (Co. Lit. 298), of-a remainder given to. an Want, who, on coming of age, refuses it, we treat the life estate as having for a moment, vested in Mary Yeaton, the consequence seems to be the same. The children, in either case, according to established,principles,.take the property immediately.’’
It having been further objected that lapsed legacies are tp he treated as undevisod and go to the heir, and that therefore-the income of the property, intermediate testator’s death and the-widow’s death should go to the heir, otherwise the legatees in remainder would receive more than testator intended, the court further held that the effect of her rejection was to accelerate the gifts in remainder,, and include in them that income. (Citing Jarman on Wills, 513; Fuller v. Fuller, 1 Cro. Eliz. 422, 425; Cranmer's Case, Dyes, 309 b arguendo.) Yeaton v. Roberts, 8 Foster, 459.
The testator having five tracts of land, willed four tracts to his four children by the first marriage, and his home tract he willed to his widow, during life or widowhood, with, remainder to their infaht Sarah. The widow dissented from the will, and had dower assigned to her in two hundred and thirty acres, fifty-three acres of which was in the home tract and the remainder in the lands willed to the four children. Held, that the one hundred aeres- of the home tract, which was *338 thus uncovered, passed immediately to the infant, Sarah, although •neither the lite or widowhood of the mother had determined ; and the one hundred acres, .not having been included or noticed in a partition the elder children were not entitled to contribution from the devise to Sarah. Ezell v. Ezell, 1 South. L. Rev. 369.
Where real estate was charged by testator with an annuity for the benefit of the widow, and it was provided that at her death, the estate •so encumbered should be disposed of by the executors, in accordance •.with the directions of the testator,—Held that the dissent of the widow from tho will, discharged the encumbrance, and the estate passed to .-.the devisees under the will. The court say that tile dissent of tho wife ;to the will discharged the fund of §20,009, as completely as her death •.would have done. Armstrong v. Parks, 9 Humph. 195.
The foregoing Tennessee decisions appear to have been followed in Robinson v. Harrison. 2 Tenn. Ch. 11.
In Brown v. Hunt, 12 Heisk. (Tenn.) 404, a particular estate being ■ devised to ,the widow, with limitation over, and tho widow dissenting .from the .will,—Held, that thereupon tho limitation over took effect at once, except so far as affected by the widow’s right to her dower and ••distributive share.
In Holderby v. Walker, 3 Jones Eq. (N. C.) 46, where an estate in •remainder was dependent upon the life estate of tho testator’s widow, .-.who waived the provisions of tho will and took her sharo under the statute, it was conceded that estates in remainder vested immediately mpou the determination of the estate or interest of the widow.
A testator gave personal property to his wife for her life, and then ■ to tho daughter’s children.' Tho wife dissented from the will. Held, 'that the bequest to the daughter took effect immediately. Adams v. Gillespie, 2 Jones (N. C.) Eq. 244.
The principle is recognized without discussion, in the recent case of Milliken v. Welliver, 37 Ohio St. 460 ; S. C., 2 Am. Prob. R. 417.
Testator devised all his residue, real and personal, to his wife during her lifetime, with power to dispose of §650,—adding “ the residue -of my estate is to be distributed to tho heirs of my side of the house, in such portions as she may direct by will or otherwise.”
The Ohio statute prescribes that if a widow fails to elect to take : under the will, she shall retain her dower, and a share of the personalty as in case of intestacy. The widow in this case failed to manifest an actual election, and died five months after her husband. Held, the devise took effect in favor of each of tho heirs or his legal representatives in equal shares, and that as the real estate vested in the residuary devisees, the rents and profits accruing after the testator’s death vested in them also. Milliken v. Welliver, supra.
*339 A caso to the contrary on this point is Knepley’s Appeal, 17 Pa. St. 19, where it appears that a testator made certain devises to his wife, ■and directed $3,000 to be put at interest and the income thereof to be paid to her during her widowhood ; and at her marriage or decease, to his son A. during his life, and at his decease, the principal to be paid to other sons. The widow refused to take under the will. Held, that A. was not entitled to the income from the refusal of the widow to take, but the court directed that the balance in the bands of the administrator, which was less than $3,000, should be invested and allowed to accumulate until the marriage or decease of the widow, when the sum of $3,000 might be required to be invested for the benefit of A., or if he should not bo living, then to be paid to his other sons according to the will.
The conclusion above stated is not inconsistent with the rule that a gift to take effect on an event which never happens, as, for instance, on A. attaining majority, which ho never does, wholly fails. The distinction is well explained by Surrogate Brauford in Taylor v. Wendel, 4 Bradf. 325, and his statement of it followed in Fox v. Rumery, 68 Me. 121, 129.
II. Compensation to those at whose expense the acceleration is made.
The doctrine of the case in the text that those whose gifts are reduced by the widow’s election to take dower instead of the provisions of the will, are entitled to compensation out of the fund or estate which was offered her in lieu of dower, is sustained by the following cases in addition to those cited in the opinion.
Devisee’s prejudiced by the widow’s election of dower, are equitably entitled to compensation out of the rejected provision made for her in the will, and this may be decreed in their answer in her suit for the dower. Jennings v. Jennings, 21 Ohio St. 56.
"Where, by reason of the widow renouncing a provision made for her by the will, in order to take her share under the statute, property, intended by the will for others, is taken, such others have an equitable claim to substitution and indemnity, so far as the interest which was renounced by the widow is concerned. Timberlake v. Parish, 5 Dana (Ky.) 345, 352.
A testator domiciled in Rhode Island executed a will in which he made provision for his widow, but did not express that it was in lieu of dower. lie afterwards became domiciled in Massachusetts, and died in that State, leaving real estate in Massachusetts, Rhode Island, and Minnesota; the laws of the two last-named States providing that a widow may recover dower where provision is made for her id her deceased husband’s will, unless a contrary intention is expressed by the testator,—Held, that Pub. St. Mass. c. 127, § 20, providing that “ a *340 widow shall not be entitled to her dower, in addition to the provisions of her deceased husband’s will, unless such plainly appears to have been the intention of the testator," did not apply to land out of the State, and that, upon the sale of the lands in Minnesota, the widow was entitled to one-third of the proceeds, but was to contribute out of such proceeds, with the legatees under the will, to the payment of debts secuied by mortgage upon the Massachusetts lands. Staigg v. Atkinson, 144 Mass. 564; s. c., 12 Northeastern Rep. 354.