Chief Justice Robertson
delivered the Opinion of the Court.
James Parish, who died early in the year 1830, leaving a widow by whom he had no children, and also leaving six children by a former marriage, made a will, admitted to record in April, 1830, by which he directed his execu *346 tor to sell and distribute among his children, or their representatives, so as to make them all equal, the whole of his estate, real and personal, after satisfying the following legacy to his surviving “wife;” — “First, I give and be- “ queath unto my beloved wife, Tabitha Parish, one negro man named Harry, twelve hundred dollars in gold “ or silver, one horse — her choice of my stock of horses, “ one gig and harness, one choice bed and furniture, two “ cows and calves, five head of sheep, and one bureau— “ all of which property my said wife is to hold for her “ own use and benefit during her natural life, .and, at her “ death, to descend to her grand-daughter, Mary Brand.”
Mrs. Parish having, according .to the statute of this State on that subject, renounced the provision made for her by the will, the County Court allotted to .her .one third of the personal estate and of the land .and slaves. And thereupon, the executor, being of the .opinion that the legacy in remainder to Mary Brand, had been destroyed by the widow’s renunciation, sold, for about one hundred and fifty dollars, all the .perishable property embraced in it, excepting Harry, whom he retained in his .own hands; and, after Mrs. Parish’s death, in December, 1834, he refused to deliver to Mary Brand, any portion of the legacy bequeathed to .her, insisting, as he doubtless believed, that she was entitled to nothing. Afterwards, in October, 1835, Henry H. Timberlake, who had, in the mean time, intermarried with Mary Brand, whilst she was a minor, brought this suit in chancery, in his own name and in that of his wife, against the executor, William Woods, for enforcing their claim to the legacy. The executor, in his answer, resisted the prayer for relief, on the plea that, by the renunciation by the legatee of the particular estate, the legacy in remainder had been destroyed. And the Circuit Court, upon the hearing of the case on the bill and answer, and some depositions tending, if admissible, to prove, in some degree, that the whole legacy to the widow and her granddaughter, who was no blood relation of the testator, was intended as a substitute for the widow’s legal interest, as widow, dismissed the bill absolutely; and this appeal brings up, for revision, that decree.
As the intention generally prevails in a will, an executory interest may be created by it, without the intervention of an immediate estate; and the fact, that an estate for life given by a will, was not accepted, does not, per se, destroy the remainder — as it might where the gift was by deed-; the remainder being made not to depend on the particular estate, but to succeed to it, the consequence of the of the latter, might be, that the devisee in remainder would succeed to the possession immediately, instead of being postponed till the death of the devisee for life.
A testator bequeathed a sum of money,a slave and other chattels to his wife to hold &c during her natural life, and, at her death,to descend to her granddaughter:” held that the term ‘descend,’ thus used in the will, is legatory; and that the granddaughter takes a vested remainder, and not a contingent interest as successor to the wife; that the testator’s intention Was to give the legacy to the grand daughter, for her own sake, and independently of the widow’s acceptance or refusal of the estate for life; and that, though the widow—preferring the interest which the law gave her—renounced her legacy, that fact did not destroy or defeat the legacy in remainder given to the granddaughter—there being nothing in the will indicating an intention on the part of the testator, that the grand daughter’s legacy was to depend upon the election which he is presumed to have known the widow had a right to make.
The fact that the particular estate was not accepted, and therefore did not take effect, did not, per se, destroy the remainder, as it might have done, had the document of title been a deed instead of a will; for, not only does the intention generally, prevail in a will, but an executory interest may be created by it, without the intervention or support of an intermediate estate. And therefore, as every distinct legacy or devise, without any expressed motive or object, will be deemed, in the absence of any intimation to the contrary, in the will, a bounty to each several devisee or legatee, the non-acceptance or forfeiture by one, cannot destroy the separate right of another beneficiary, but would have the effect only of hastening the enjoyment by the latter, when his vested interest was made—not to depend upon the former, but only to succeed it.
Nor will the well established rules prescribed for interpreting testamentary provisions, allow the deduction, from the face of the will in this case, that the legacy to Mrs. Timberlake was given as a consideration in lieu of her'gran'd-mother’s legal rights,as survivor of the testator.
Although the testator only declared that the slave, money and other chattels bequeathed to her grand-mother for life, shall “descend to herself, nevertheless, the legal interpretation of that declaration is, that it was legatory, and therefore, that she would be entitled to a vested remainder as a legatee, and not to a contingent interest as a successor of the testator’s wife, whose interest was limited by the will to her own life. The language of the will imports that the testator intended that, after his wife’s death, Mary Brand should be entitled to the-property bequeathed to the former for life, and, of course, all her right to the remainder being derived from his bounty, he must have used the word “descend” synonimously with pass, or other word of purchase from him *348 self. Nor can we feel authorized to decide that, though she was a legatee, her grand-mother was the only consideration of the bequest to her, or that she should have nothing unless it should pass to her through her grand-mother, and in consequence of her grand-mother’s acceptance of the life estate provided for her by the will.
According to the common law, a legacy to the wife is not construed as having been given in lieu of the slaves or her thirds — unless the intention that it should so operate, is expressed, or plainly to be inferred from the will, or unless any other interpretation, would be plainly inconsistent; &, independent of the statute of this state, a devise of a portion of a testator’s estate to his wife, and all the residue to others, or of the whole to be sold for the benefit of the wife and others, does not authorize the conclusion that the devise to her, was intended to be in lien of her dower (nothing appearing in the will, indicating that such was the testator’s intention,) and the other devisees, or the purchasers under the will, in such case, will take subject to the right of dower.— But the act of 1796 § 24 requires a renunciation by the widow, of the provision made for her by the will, before she can be entitled to any interest in the chattels of the testator.—So (in this case,) the testator having devised a sum of money, a slave and other personalty to his wife for life, remainder to her granddaughter, the legacy, if accepted by the widow, would be a bar to her interest in the slaves and personalty —not to her right of dower in the land.
*348 The legal construction of the legacy to her, is that it was intended as a bounty to herself, and was given to her on her own account, and in consequence of her destitution and the testator’s affection for her, as one of his family.
We are bound by the facts and the inflexible rules of construction, to presume that, independently of her grand-mother’s acceptance or renunciation of the life estate bequeathed to her, Mary Brand was intended to be a legatee.
And we are not authorized to infer, from any thing in the will, that the testator would have given her nothing, had he known that his wife would renounce the intermediate legacy, or that he would have bequeathed less in value than he did. Nor does there appear to be any legal foundation for a presumption that he intended that her interest should be contingent and subject to destruction or impairment by the will or the act of her grandmother.
A destruction of the life estate could not defeat the remainder vested by the will; and this the testator' may be presumed to have known.
Doubtless, he supposed that his wife would accept the legacy to herself, and would claim nothing else. But he knew that she had a perfect right to elect between that and her legal right as his survivor. And, nevertheless, his will does not intimate that the grand-daughter’s legacy should depend on that election.
The legacy to the grand-daughter, like that to the wife and the children, is distinct, independent, and unconditional.
According to the common law, even the legacy to the wife should not be construed as having been given in lieu of her potential interest as widow; for it seems to be now well settled by authority, that such a constructive *349 effect should never be given to a testamentary provision for a wife, unless the intention that it should so operate be expressed, or can be plainly inferred, or unless any other interpretation would be inconsistent with the will.
The leading case on this point is that of Lawrence vs. Lawrence, 2 Vernon, 365; in which, Lord Somers having decreed that a personal bequest and a devise also of some land to’ the testator’s wife — the residue of his estate being devised to his son — should be construed to have been substituted for her dower, his opinion was reversed by Lord Keeper Wright; who was afterwards sustained by the concurrent opinion, upon the same will, given by Lord Chancellor Cowper, and affirmed by the House of Lords, as reported in 1 Bro. P. C. 591. And the principle of those decisions has since been often reaffirmed, in England and America; and was expressly recognized by Chancellor Kent, in the case of Adsit vs. Adsit, 2 Johnson’s Chy. Rep. 448. According to those cases, it appears that, a mere devise of the whole of the testator’s remaining estate to others, or to be sold for their benefit, and even for that of the wife also, is not so inconsistent with her legal right to dower, as to authorize the deduction that the provision made for her by the will was intended as a substitute for her dower, but that the other devisees, or the purchaser under a sale directed by the will, would take subject to her incidental incumbrance of dower right, and that the devise should, of course, be understood as being intended by the testator to be thus taken cum onore.
Now, when tested by any principle which has been authoritatively established, the will, in this case, contains nothing which would authorize the judicial conclusion, that the legacy to Mrs. Parish was intended to be a bar to her right to dower in the testator’s land.
But, although she might have been entitled to dower in the land, without renouncing the legacy, the twenty fourth section of a statute of 1796, of this State, re *350 quired such a renunciation before she could, as widow, have been entitled to any interest in the slaves and chattels of the testator. 2 Stat. Law, 1544-5, and Wood and Wife vs. Lee, 5 Mon. 58.
It may be that “parol and extrinsic evidence may be admitted to rebut a consequential equity, or an equitable presumption, or even that constructive effect which arises altogether from presumption.” But where there is no latent ambiguity in the writing, it can be explained only by itself: parol evidence is not admissible to defeat, change or vary its legal import: it is not admissible to prove the motive of the testator, or the terms on which a bequest was made, when the will itself furnishes no clue to any such motive or terms.— So held that, where there was a bequest of money, &c. to a wife for her life, then to go to her grand-daughter-who was not of kin to the testator, and no intimation in the will, that these bequests should be in lien of dower, parol evidence is not admissible to show that such was the intention of the testator.
*350 And therefore, as we must presume that the testator understood the legal effect of his will, we should infer, from its tenor and phraseology, that he intended the legacy to his wife to be in bar of her legal interest in his slaves and personalty, but not in lieu of her dower in his land. And a fortiori it cannot be presumed that the legacy to the wife’s grand-daughter was given altogether under an expectation that the wife would therefore claim no other interest in his estate than that which he bequeathed to herself, or that she would accept the provision made for her by the will. For, as before incidentally suggested, we are bound to presume, according to reason, as well as uncontroverted authority, that, nothing appearing satisfactorily to the contrary, the' legacy to Mary Brand was given as a bounty to herself, and on her own account, and in no other way, nor for any other purpose.-
The only remaining question is, whether the extraneous facts, stated by witnesses, for the purpose of evincing an intention different from that imported by the will itself, are admissible.
Upon this point the most liberal rule which can claim’ the countenance of respectable authority, is that suggested by Lord Thurlow in Coote vs. Boyd, 2 Bro. Chy. Rep. 521, and that is, that parol and extrinsic evidence may be admitted to rebut a consequential equity, or an equitable presumption, or even that constructive effect of a will, or other document, which arises altogether from presumption.
But if this doctrine be admitted to be unexceptionable, it cannot, in our opinion, be applied, either avail-ably or appropriately, to this case. Here there is no-equitable consequence insisted on, as springing up under the will, and which, because it is a mere matter of equitable consideration and discretion, might be resisted by parol evidence inconsistent with its force in foro conscientice; nor is there either any equitable presumption, or *351 any constructive effect arising from any presumption founded on the provisions of the will. If a parent bequeath property to a child, the bequest would be construed as having been intended as a portion; so too, if a stranger, showing by his will, that he assumes to stand in loco parentis towards his legatee, make a bequest to another stranger. And therefore, in either case, if the testator afterwards make a provision by way of advancement to his legatee, it will, according to its character and extent, be presumed to be an ademption altogether, or pro tanto, of the bequest. In such a case, the legal effect of the bequest, arising from the construction of the will itself, would be defeated by a presumption resulting, prima facie, from the fact that, (the will showing, either expressly or constructively on its face, the same motive as that which led to the subsequent advancement or provision in another made by the testator to the legatee,) the last act was intended as an execution of the purpose, in whole or in part, contemplated by the first. And, e con-verso, an undertaking by one, to provide for or advance another, may be presumptively discharged by a legacy given expressly as a provision, or which may be presumed, from the face of the will, to have been intended as a provision. And, of course, such a presumptive ademption or satisfaction, arising from such coincidences, and not being conclusive and incontrovertible, may be either fortified or repelled by any facts which may tend to the same or a different inference. And the admission of parol testimony for such a purpose, would not be subversive of any rule of evidence, or inconsistent with the policy of the statute of frauds or of wills; because it would not be used for the purpose of contradicting or explaining evidence of a higher grade, or of defeating the constructive effect of any writing. But where, as in this case, a will or other document of title, is ascertained to import a certain legal effect, if such an effect could be controlled or defeated by extrinsic parol evidence, inconsistent with the legal construction of the written memorial, the established gradation of evidence would be abolished or disregarded, and the statute of frauds and of wills, and of conveyances, would be perfectly *352 nugatory. A will or other writing, where there is no latent ambiguity, can be explained only by itself. Any will might be revoked or destroyed by parol evidence, if any such testimony should be admitted to prove the motive which actuated the testator, or the terms on which a bequest was made, the will itself furnishing no clue to any such motive or terms. And it has been frequently decided, and especially by Lord Eldon, in 16 Vez. 486, that such extrinsic testimony is inadmissible. For a similar reason, it has been decided that as, in the absence of any fact or suggestion in the will to the contrary, a bequest to a stranger judicially implies a sheer bounty — parol evidence would be inadmissible to prove that it was intended as a portion, or as any thing else than a voluntary gift to and for the use of the legatee. And in 1 Roper on Legacies, ch. IV. sec. IV. passim, the same principle is illustrated by many adjudged cases. The question as to the effect and purpose of the legacy in this, case, is one altogether of legal construction. There is no presumption arising from any fact, appearing in the will or out of it, which parol or extrinsic evidence would be competent to fortify or defeat. The object of the extraneous evidence introduced, but objected to, was not to fortify or repel a presumption previously arising from the will or otherwise; but it was to defeat the legacy, by proving, not a latent ambiguity, but a fact inconsistent with the constructive import and effect of the will itself. If such an end can be thus attained, the effect of the most solemn wills will always depend on the veracity of witnesses, and not on the language and provisions of the wills themselves.
Devise to a wife for life; but she takes her thirds rather than the devise; in consequence of which, the legacies to others are reduced: they are equitably entited to the interest that she renounces; that is, the income, during her life, of the estate that was devised to her.
*352 But though it appears from the foregoing conclusions, that the appellants are entitled to a decree for something, yet they are not, as we think, equitably entitled to all they claim.
Whether, in an ordinary case, Mrs. Timberlake would have been entitled to her legacy as soon as her grandmother renounced her life estate, we do not consider it material now to determine. For if she might have had such an anticipated right when considered abstractly, still, as the property intended by the will for others, was *353 .taken by the widow, the persons-so affected seem to have had an equitable claim to-substitution and indemnity, so far as the life interest which was renounced by the widow, was concerned; and therefore, the appellants are not, in any view of the case, entitled to the profits of the legacy during the life of Mrs. Parish.
A specific devise (of a slave) is not subject to contribution;but the general legacies are—the remainder after a life estate, as well as the rest-to make up the third for the widow, to whom the estate for life was bequeathed, but who renounced it.
And, as all the legacies, except that of the slave Harry, were general, and should therefore abate pari passu, the appellants are entitled only to Harry and his profits since the death of Mrs. Parish, and to the residue of the value of their legacy after deducting from it the just amount for contribution, towards the widow’s thirds; and also, to legal interest from the time of her death.
Wherefore, it is decreed that the decree of the Circuit Court be reversed, and the cause remanded, for a decree according to this opinion.