## LATTA v. BROWN.

(*Nashville.* March 7, 1896.)

1. WILLS. *Compensation of devisee disappointed by widow's dissent.*

Other devisees must contribute to make up a deficit in a devise, caused by the widow's dissent and election to take dower instead of the provision made by the will, to the extent that the refused share of the widow is insufficient to compensate the loss of the disappointed devisee. (*Post, pp. 344–355.*)

Code construed: ¿ 3247 (M. & V.); ¿ 2401 (T. & S.).

Cases cited: Vincent v. Vincent, 1 Heis., 333; Robinson v. Harrison, 2 Tenn. Ch., 11; Colvert v. Wood, 93 Tenn., 454; Thompson v. Stacy, 10 Yer.. 493; White v. Nashville, 2 Swan, 364; 21 Ohio St., 56, 81; 62 Ala., 310; 9 Gratt., 242; 65 Penn. St., 314; 136 Pa., 307; 17 Serg. & R., 26; 3 L. R. A., 500; 15 Kans., 625; 14 L. R. A., 293; 34 Iowa, 437; 11 Am. Rep., 149; 73 Iowa, 1s9; 12 L. R. A., 227; 87 Pa. St., 200; 5 Dana, 352.

2. SAME. *Acceleration does not obtain against a disappointed devisee.*

The right of remaindermen to be accelerated and immediately to enter upon and enjoy the use of land devised to them subject to a widow's life estate, which arises when she refuses to take under the will, is subject to the superior right of a disappointed devisee, whose share is diminished by the widow's dissent, to have compensation for such loss by taking the life interest which the widow refused. (*Post, pp. 356, 357.*)

Cases cited: Robinson v. Harrison, 2 Tenn. Ch., 11; Waddell v. Terry, 4 Cold., 51; Armstrong v. Park, 9 Hum., 195; Brown v. Hunt, 12 Heis., 405; State v. Smith, 16 Lea, 667; 14 L. R. A., 294; 5 Dana, 352; 1 Met. (Ky.), 515.

---

FROM MAURY.

---

Appeal from Chancery Court of Maury County. A. J. ABERNATHY, Ch.

Latta *v.* Brown.

E. H. HATCHER for Taylor and wife.

L. B. HUGHES for Taylor children.

N. R. WILKES and VERTREES & VERTREES for Alexander children.

WILKES, J. This case is before us on appeal from the Court of Chancery Appeals. Dr. W. H. Brown, of Columbia, Maury County, Tennessee, died, leaving surviving him his widow, Mrs. Mary Lou Brown, his daughter, Mrs. Maggie C. Taylor, and Lizzie C. and Willie B. Alexander, his grandchildren by a deceased daughter. He left a will, by which he devised to his daughter, Mrs. Taylor, for life, with remainder to her children, his residence, two storehouses and lots and three other lots in Columbia. He left a farm of about six hundred and thirty acres of land in Maury County, which by his will he divided into two equal parts, one-half of which he gave to his widow for life, and the other half to the Alexander children, with certain limitations over in the event of their dying without issue. The half given to the wife, upon her death, was to be equally divided between Mrs. Taylor and the Alexander children, and the widow was given choice of the two portions. The personal property was also bequeathed, but as it all was required to pay debts, it need not be further considered. The widow dissented from the will, and dower was thereupon assigned her, embrac-

Latta *v.* Brown.

ing the residence, one storehouse and the rent of the other for four years, all of which was property given by the will to Mrs. Taylor. The farm was divided into two parcels of unequal size but equal value, and Mrs. Taylor was allowed to take choice, on the idea that she was substituted to Mrs. Brown's rights in this regard, and she chose lot No. 1, being the larger parcel. Upon the bill filed to wind up the estate and settle the rights of the parties, the Chancellor decreed that Mrs. Taylor should take the lot No. 1 for life, as part compensation for what she lost by the dissent, and that further injury had resulted to her as a consequence of the widow's dissent, and that such further injury or damage should be borne by Mrs. Taylor and the Alexander children in the proportion which they took in value in the estate of Dr. Brown.

The Master made a report designed to show the respective values of the shares, but the Court was of opinion it did not sufficiently appear what the amount of Mrs. Taylor's loss or injury was, and the report was set aside, and the Master was directed to report in dollars and cents what would be just compensation to Mrs. Taylor arising out of the dissent and allotment of dower.

Taylor and wife excepted to the action of the Court refusing to confirm the Clerk's report, but did not appeal. The Alexander children, by leave of the Court, appealed before the coming in of the second report.

The Court of Chancery Appeals held with the Chancellor, that not only the property thus refused by the widow could be given to the devisee thus disappointed, but that the other devisees must contribute *pro rata* to make good the deficit, if any, according to the respective values given to them, the land renounced by Mrs. Brown in this case being insufficient to make good to Mrs. Taylor the loss sustained by her in consequence of the dissent; and it is mainly upon the latter portion of this holding that the case is now before us, it being clear that the devise refused by Mrs. Brown must go to Mrs. Taylor, to reimburse or indemnify her in her loss under the dissent, unless the doctrine of acceleration prevails in behalf of the Alexander children. The holding and reasoning of the Court of Chancery Appeals is, that when the widow dissented her right of dower attached, and became an incumbrance on all the testator's lands, no matter to whom devised, and that it "hovered" over all of them as an incumbrance until assignment made, and, inasmuch as the assignment made in this case was exclusively out of property devised to Mrs. Taylor, that devised to the Alexander children was thus relieved of the incumbrance, and, upon broad grounds of equity, their shares must contribute *pro rata* to reimburse Mrs. Taylor for the loss sustained by her.

This contention, thus presented, has not been directly adjudicated in Tennessee, but it is claimed

that, in principle, it has been decided in favor of the holding of the Court of Chancery Appeals.

For the Alexander children it is earnestly insisted that by the Code (M. & V.), § 3247, it is provided that dower shall be so allotted as to embrace the dwelling house, outhouses, buildings, and other improvements, or if it be unjust to give the widow all the house, a proper part must be assigned, and unless great injustice result on account of the value of the house, its value is not to be taken into consideration. *Vincent* v. *Vincent*, 1 Heis., 333. It is, therefore, argued that the right of dower is not a common burden, which hovers over all the land until it is localized by assignment in a particular locality, but that it must be so located as to embrace the mansion house and other improvements, although it may also embrace other lands, in order to make the amount to which the widow is entitled. Assuming the correctness of this contention, it is therefrom argued that when the testator made his will, giving his mansion house to Mrs. Taylor, he must have had in view the law that his widow could take it by dissenting from the will, and, inasmuch as he made no provision for such a contingency, he must have intended that in such event Mrs. Taylor should bear the loss so far as she could not be compensated out of the property devised to the widow, and which, upon her dissent, she renounced. On the other hand, it is insisted for Mrs. Taylor that the renounced property, having been ex-

hausted without fully compensating the disappointed devisee, she has the right to call upon all the other devisees to contribute, *pro rata*, to make up this deficit, and thus execute the will of the testator and preserve the rights of each, so far as may be, under the changed condition of affairs. There is no serious question made, and cannot be, that the dissent of the widow and her · election to take what the law gives her, instead of under the will, is followed by the usual consequence of an election in other cases, and that the property designed for her in the will must be sequestered and given as compensation as in other cases of election. 1 Pom. Eq. Jur., 497–517; *Jennings* v. *Jennings*, 21 Ohio St. Rep., 56, 81; *Dean* v. *Hart*, 62 Ala., 310; *McReynolds* v. *Counts*, 9 Gratt., 242; *Kinnaird* v. *Williams*, 31 Am. Dec., 658; Sandoe's Appeal, 65 Pa. St., 314; Bationes Estate, 136 Pa., 307; *Calvert* v. *Wood*, 9 Pickle, 454; *Cauffman* v. *Cauffman*, 17 Serg. & R., 26; *Callahan* v. *Robinson*, 3 L. R. A., 500; *Allen* v. *Hanner*, 15 Kans., 625; 6 Am. & Eng. Enc. L., 255, and notes; *Ford* v. *Ford*, 70 Wis., 55; *Jones* v. *Knappen*, 14 L. R. A., 293.

But, in order to sustain the holding of the Court of Chancery Appeals in this case, there must be the further interposition of the doctrine of contribution between the devisees in order to make up the deficit, when there is such deficit, after applying the property devised to the widow and refused by her.

For the Alexander children it is insisted that no such doctrine of contribution exists, but that only the general results of an election follow, and, hence, only the refused share of the widow can be given to the disappointed devisee. The learned Court of Chancery Appeals, speaking through Judge M. M. Neil, cite *Henderson* v. *Green*, 34 Iowa, 437, also reported in 11 Am. Rep., 149, and the case of *Robinson* v. *Harrison*, 2 Tenn. Ch., 11, as conclusive upon the point presented.

In the first case the testator devised the plantation on which he resided to his wife, in lieu of dower, also certain personal property, and he gave forty acres of land to Euretta Green and one hundred and sixty acres to Emily Booher, subject to the life estate of the widow. The widow dissented and took dower, and eighty acres of that assigned Emily Booher· was given to her in the assignment and forty acres additional of Emily Booher's share was sold to pay debts. The Court held that both devises to Mrs. Green and Mrs. Booher were specific, and that Mrs. Green's forty acres must contribute also to the common burden of the widow's share upon her dissent. It will be noted in this case that all the lands, including the forty acres given to Mrs. Green, were given to the widow for life, so that, to the extent of the life estate of the widow, it was simply sequestering that property given by the will to her and not separate property given exclusively to a devisee, and it is conceded

that all the property given to the widow may be
sequestered under the general rule. It seems, how-
ever, that the Court in that case did not limit the
sequestration to the life estate but held the entire
forty acres liable to contribution. The Court also
said that it was manifest from the terms of the
will that the testator intended Mrs. Green should
take her forty acres burdened with the incumbrance
of the widow's dower. We find no express lan-
guage to this effect in the will, and the manifest
intention must appear from implication or the gen-
eral principles of law in such cases, if at all.

It is said that the later case of *Gainer* v. *Gates*,
reported in 73 Iowa, 149, is in conflict with the
conclusion of the Court of Chancery Appeals and
probably with the earlier case of *Henderson* v. *Green*,
34 Iowa, 437. In it Gainer devised all his lands,
except his mansion and homestead, to his wife, and
gave the homestead to plaintiff, and gave twelve
legacies to twelve different legatees. The widow
was, however, given a life estate in all the prop-
erty, real and personal. The widow dissented, and
the homestead was assigned to her as dower, and
this defeated the legacy to Gates. Suit was there-
upon brought by Gates against the administrator and
heirs to recover the value of the homestead thus
lost. The effort in that case was to charge the
estate with the value of the homestead, and the
Court held that, indirectly, this was an effort to re-
cover from the heirs of the testator, and taking it

out of the estate was making all contribute *pro ratu.* The Court said: "The law presumes that the execution of the will was with a knowledge of the law by the testator. He knew that nothing would pass to the plaintiff except with the widow's assent. The law will presume that it was his purpose to make the devise contingent upon such consent; that his purpose and wish was that if the wife did not hold the homestead, plaintiff would, but if she did, then plaintiff should take nothing by the will. If we may inquire into the wish and purpose of the testator, we can reach no other than this conclusion." The question of compensation under the general doctrine of election appears to have been ignored. This case is somewhat obscure, both in its statement of facts and conclusions of law, and was decided upon several grounds not applicable in this case. It was not an effort to recover from the legatees or devisees but from the administrator and heirs, and it appeared there was fund enough passing *in residuum* to the heirs to compensate for the loss, and it was this fund which was sought to be reached. The legatees and devisees were not before the Court and not affected by the holding. The Court said: "We need not inquire whether this doctrine is applicable to the case of the widow and beneficiaries under the will other than the plaintiff, for the reason that no claim is made against them in this action. It is surely not applicable to the heirs who will take the

residue of the estate;'' and the Court's conclusion was, that the plaintiff could not recover against the estate, which was not bound by any contract to him. Mr. Farnham, the annotator of the Lawyers' Reports, cites this as one of the two cases out of harmony and line with the current of authority,' and refers to it as a peculiar case. It clearly does not consider the right to contribution from the other legatees and devisees under the will, and the doctrine of compensation, so uniformly held in other cases, was not discussed but was ignored, and the decision was placed upon other and different grounds. See *Jones* v. *Knappen*, 14 L. R. A., 293, and notes.

The special question of requiring the residuary legatees and devisees, or the heirs, to make good such deficiency, is considered in the case of Vance's Appeal, 12 L. R. A., 227; Gallagher's Appeal, 87 Pa. St., 200; *Timberlaike* v. *Parish*, 5 Dana, 352. The gist of these decisions, as we understand them, is that the residuary legatees, and, by parity of reason, heirs, will be required to make good such loss rather than specific legatees.

In the case at bar this question does not arise, as there is no residuary fund, and no intestacy as to any property, and the effort is to enforce contribution among special devisees—that is, devisees of specific property.

Sandoe's Appeal, 65 Penn: St., 314, is much commented upon. In that case Bard, the testator,

gave to his daughters pecuniary legacies, to his son, William, his mansion place, subject to certain charges for his wife, and if he died before twenty-one without issue, the mansion place to go over to Jefferson, his other son, in fee. The executors were directed to buy a farm for Jefferson, equal to the mansion place, if he desired it, and to sell other real estate for that purpose. The widow dissented. The assets were not sufficient to meet the provisions of the will. The Court directed the pecuniary legacies to the daughters to be paid in full, and whatever deficit there might be after sequestrating the benefits intended for the widow and selling the real estate specified in the will, should be paid out of William's mansion farm. It was evident from the whole will that the testator intended William and Jefferson to share equally in his estate. The decree directed the deficiency, after selling the other real estate, to be raised out of William's mansion farm, taking care, however, to preserve the equality of value between the two brothers. It appeared that William had received $4,123.91 more than his share, and it is evident the clause in the decree had special reference to this feature, and intended it to be refunded if necessary, and we think the case not only holds and announces the general doctrine that the renounced share of the widow shall be applied to the reimbursement of the disappointed legatee or devisee, but that the remaining devisee, William, must contribute to make up any deficiency, so at all times

to keep the shares of William and Jefferson equal, which was the primary intention in the will.

The case of *Robinson* v. *Harrison*, 2 Tenn. Ch., is also referred to as sustaining the conclusion, of the Court of Chancery Appeals by that Court. In that case the Chancellor held that, when the personal assets were insufficient to pay debts and the widow's distributive share of one-third, it was the duty of the executor to make the deficiency fall proportionately on all the specific devises and bequests, and to account to the widow for the stock bequeathed to her, less her proportion of the loss, and he did not have the right to select one legacy to bear the burden of the widow's dissent, whatever may have been his right to dispose of the stock to pay debts. This case, it appears, was affirmed in the Supreme Court. It is assailed upon the ground that the Court proceeded in that case upon the idea that the widow's "third" of personal estate was like her dower, superior to the claims of creditors, which was incorrect, and that the legatees and devisees made no question or resistance, and such seems to have been the case. But this, we think, does not destroy the force of the decision, because the widow's right to her "thirds" is superior to the claims of special legatees under the will, and the Court proceeded upon this idea in making the burden of the "thirds" fall equally upon all the special legacies, there being no general or residuary legacy. This was evidently what the Court intended to decide in

a case of legacies making the widow's "thirds" occupy the place of dower in this case. A very strong and ingenious argument is made upon the theory that the dower right before assignment is not an incumbrance "hovering" over the whole of the lands of the deceased. It is said that, upon the husband's death, the dower of the widow becomes a consummate or "vested right," which ripens on assignment into a freehold estate, and this is unquestionably correct. 2 Scribner on Dower, 8, 26, 28.

But it is further insisted that it is a localized right to the mansion house, and not an incumbrance hanging over the whole estate, and that the mansion must be assigned unless great injustice would result, and even then a part of the mansion must be assigned, and, hence, it must be so localized as to rest on the mansion premises; and the testator, knowing this as a matter of law, intended that if the mansion was taken by the widow, then Mrs. Taylor, to whom it was given, must lose it.

Even if we were to concede the correctness of the proposition as to the first statement, that the widow must take the mansion in her dower assignment, the conclusion deduced is still a debatable proposition, and by no means follows as a logical result. But we are not prepared to assent to the correctness of the first proposition. We do not think that, prior to the allotment of dower, the widow acquires a freehold estate in the land at any place. She has no estate until assignment; after-

wards she has. *Thompson* v. *Stacy*, 10 Yer., 493; *White* v. *Allderman*, 2 Swan, 364.

She is not required to take the mansion in her dower. She may waive it, and take dower elsewhere. The right to the mansion rests upon her choice alone, and it is not imposed upon her against her will. The heirs or devisees cannot require her to take it, but it is optional with her. If, in this particular case, she had elected to take the lands allotted to the Alexander children, would it be insisted that they would have been confined to the land refused by her to reimburse themselves? It is evident in this case the testator did not intend his daughter and grandchildren should share equally in his bounty, but only in certain proportions, and this is not disturbed, but followed, by the conclusion reached by the Court of Chancery Appeals—that is, the relative proportions of Mrs. Taylor and the Alexander children are attempted to be preserved as indicated in the will.

The guardian *ad litem* for the Alexander children presents still another view of the case, so far as their rights are concerned, which is, that by the will they are remaindermen of one-fourth of the tract of 630 acres of land offered to the widow for life by the will, but renounced and refused by her upon her dissent. It is insisted that the widow, having declined and refused to take this life estate in one-half the land, the estates of the remaindermen were accelerated, and they became immediately, on her

Latta *v.* Brown.

refusal, entitled to enter upon and enjoy this part of the land out of which the widow was, by the will, to have a life estate. This contention is based upon the holding of this Court in *Robinson* v. *Harrison*, 2 Tenn. Ch., 11; *Waddell* v. *Terry*, 4 Cold., 51; *Armstrong* v. *Park*, 9 Hum., 195; *Brown* v. *Hunt*, 12 Heis., 405; *State* v. *Smith*, 16 Lea, 667. And this is unquestionably the general rule, but, under the facts in this case, the right or equity in Mrs. Taylor to compensation for her loss is superior to, and must prevail over, the right and equity of the remainderman to be accelerated. *Wood* v. *Wood*, 1 Met. (Ky.), 515; *Timberlake* v. *Parish*, 5 Dana, 352; *Jones* v. *Knappen*, 14 L. R. A., 294, 295, and notes on page 295.

The decision of the Court of Chancery Appeals is affirmed, and the cause will be remanded to the Chancery Court at Columbia for the execution of the order made by that Court, and the costs will be equally divided, as decreed by that Court.