## George W. Dunshee et al, Appellants, v. Sadie K. Dunshee et al, Appellees.

### Gen. No. 5,769.

1. WILLS, § 468*—*what is power of court of equity on renunciation of will.* Where a widow renounces a will a court of equity may take hold of the estate renounced and distribute it equitably among the disappointed legatees.

2. WILLS, § 468*—*what are rights of devisees and legatees when will is renounced.* Where the renunciation of a will causes loss to devisees, such devisees have no right of contribution from other legatees, and in the absence of statute a court of equity will not rearrange the legacies and devises in such a way as to equalize the losses.

Appeal from the Circuit Court of Carroll county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913.

DUNSHEE & MACKAY, for appellants.

F. J. STRANSKY, for appellees.

MR. JUSTICE CARNES delivered the opinion of the court.

A bill in chancery was filed by George W. Dunshee, Frank S. Dunshee, John Dunshee, Charles Dunshee and Edna Dunshee Mann, five devisees of Robert Dunshee, deceased, against Sadie K. Dunshee, the widow, E. Harry Carpenter, the executor, and LeRoy Houghton, Harry Houghton, Jane Bennett, Hudson Dunshee and Leonora Nichols, five legatees, making also defendant Richard Groharing a devisee. The main purpose of the bill is to compel the five defendants to contribute from their legacies to reimburse complainants for losses sustained by the renunciation and election of the widow, and consequent taking by her of one-half the land specifically devised to complainants respectively. The executor, Richard Groharing, and Hudson Dunshee were defaulted for want of answer, the other five defendants filed a general demurrer which was sustained by the court and the bill dismissed for want of equity. Complainants Frank, John and Charles Dunshee bring the case here on appeal.

It appears from the bill as amended that Robert Dunshee died testate in Carroll county, Illinois, March 2, 1910, leaving surviving him no descendant, but leaving a widow and an estate valued at $240,000, about half of which was real estate, and the other half personal property, principally negotiable paper. By his will he gave his wife two hundred acres of farm land worth about $20,000, chattel property on same worth about $1,000 and the sum of $1,000 in money. To the five complainants he devised lands as follows: to his nephew Charles Dunshee farm lands worth $24,000; to his nephew John Dunshee farm lands worth $15,000; to his nephews Frank and George Dunshee and his niece Edna Mann, as tenants in common, farm lands worth $23,000, accompanying the gifts of the several parcels of land with bequests of chattels thereon worth about

$1,000. He bequeathed to five defendants personal property as follows: to his nephew LeRoy Houghton $7,500, "to be paid in the form of notes, mortgages and certificates of deposit belonging to my estate," and the further sum of $7,500, to be paid out of like funds, in trust for Harry Houghton, a grandson of testator's sister; to his sister Jane Bennett $15,000, "to be paid in the form of notes, mortgages and certificates of deposit belonging to my estate;" to his sister Leonora Nichols $15,000, to be paid from like funds; and to his nephew Hudson Dunshee $4,000, "to be paid in cash and notes and certificates of deposit belonging to my estate." He also devised to defendant Richard Groharing, who does not appear to be a relative, farm lands of the value of $20,000, with chattels thereon of the value of $1,000. And by a general residuary clause disposed of the rest of his property as follows: to said five complainants, Charles Dunshee, one-third; Frank S. Dunshee, one-ninth; George W. Dunshee, one-ninth; Edna D. Mann, one-ninth; and John Dunshee, one-sixth; and to defendant Hudson Dunshee, one-sixth. Defendant E. Harry Carpenter was named as executor of the will and qualified and is still acting as such, with the settlement of the estate still pending in the County Court. He was by the will given power to sell real estate and charged with the care and management of that part of the land not specifically devised, until time of distribution, and the several specific devisees were directed to take immediate possession of the real estate devised to them respectively, together with the chattel property bequeathed thereon, and manage the same as they might see fit, testator stating that he believed there were sufficient notes and mortgages to much more than pay all debts remaining after his decease.

The widow renounced the provisions of the will in her favor and became entitled to one-half of all the

personal and real estate after payment of debts; and in a partition proceeding begun by her, her interest in the real estate was severed from that of the several specific devisees. The claims against the estate, which were of a small amount, were fully paid in due course of administration. The real estate devised to, and renounced by the widow, was sold in the partition proceeding and she received one-half the proceeds thereof and the residuary legatees the other half under the provisions of a decree in the case of *Dunshee v. Dunshee,* which was before the Supreme Court and the opinion reported in 251 Ill. 405.

It was alleged in the bill as originally filed that the residue of the estate left to the residuary legatees was of the value of $60,000, and that the partition proceeding was then pending and undetermined. It is alleged in the amended bill that the partition proceeding is terminated; that the residue of said estate was $15,000, "which said sum was taken by Sadie K. Dunshee on her renunciation" and afterwards stated in the amended bill that "there is a residuary fund of $5,000, now in the hands of said executor," and it is prayed that the executor be enjoined from making further payments to legatees until the assets of the estate be marshalled and their liability to contribute be fixed and determined and averred "that there is sufficient and ample funds in said residuary estate and in the general legacies aforesaid to meet and pay said widow all her claims in full without recroaching or taking any part of the specific devises. What disposition may have been made in the County Court of the specific bequest of chattel property worth $1,000 to the widow does not appear, neither does it appear whether there was any real estate that passed into the residuary fund, other than the two hundred acres devised to and renounced by the widow. We may infer that the condition of the estate materially changed after the filing

of the original bill and before the filing of the amended bill. The amendment, however, purports to state facts in existence at the time of the filing of the original bill and we will so treat it. It is averred that the residuary legatees received the proceeds of the sale of the land renounced by the widow, whether they received them in the proportion of their respective losses as specific devisees does not appear. Hudson Dunshee was a residuary legatee and not a disappointed devisee. What part he received is not stated. The bill was not framed for the purpose of obtaining a redistribution of the proceeds of the land renounced by the widow and we do not find in it the necessary allegations upon which to base relief. Appellants in their brief say the bill was dismissed for want of equity "on the ground that personal property could not be compelled to pay or contribute to the loss of real estate by disappointed devisees."

That it is within the province of a court of equity to take hold of the estate renounced and distribute it equitably among disappointed legatees is clear on the authority of *Lewis v. Sedgwick,* 223 Ill. 213; *Kincaid v. Moore,* 233 Ill. 584; and *Wakefield v. Wakefield,* 256 Ill. 296. It is clear on the authority of those cases that the doctrine of abatement of legacies is applied in this as in other cases requiring residuary and general legacies to abate before special legacies; and in the *Wakefield* case, *supra,* the Court quoted with approval the rule stated in Pomeroy's Equity Jurisprudence (vol. 1, sec. 517) as follows: "A court of equity will then sequester the benefits intended for the electing beneficiary in order to secure compensation to those persons whom his election disappoints. This rule is applied in many of the American cases cited below to elections made by widows in favor of their dower and against the testamentary provisions, whereby the in-

terests of other devisees were disturbed. Such disappointed devisees are held entitled to compensation out of the benefits intended to be conferred by the will on the widow but which she has rejected.'' The Court adds that the rule ''has been repeatedly applied by this court.'' These cases dispose of appellees' contention that a court of equity should not take upon itself the administration of an estate and that the property renounced by the widow should not be conserved for the benefit of disappointed legatees and devisees. But it is said that the rule has never been carried further than to allow the court to take hold of the property devised or bequeathed to the widow and renounced by her. The important question in this case is whether it is within the province of a court of equity after disposing of the property renounced by the widow to rearrange legacies and devises in such way as to equalize the losses, sustained by the renunciation of the will, by legatees and devisees.

Section 79 of our Administration Act (J. & A. ¶ 128) reads: ''In all cases where a widow or surviving husband shall renounce all benefit under the will, and the legacies and bequests therein contained, to other persons, shall, in consequence thereof, become diminished or increased in amount, quantity or value, it shall be the duty of the court, upon settlement of such estate, to abate from or add to such legacies and bequests in such manner as to equalize the loss sustained or advantage derived thereby, in a corresponding ratio to the several amounts of such legacies and bequests, according to the amount or intrinsic value of each.'' This is section 44 of the Act of 1845 entitled ''Wills,'' extended to cases of surviving husbands. As then enacted it was made the duty of the ''Court of Probate'' to ''abate from or add to,'' etc., instead of the ''Court'' as used in the present Act. The language is expressly

confined to "legacies and bequests." A reference to other sections of the same Act of 1845 makes it quite clear that the legislature then intended to use those words in their legal sense, excluding devises.

Section 13 of the same Act provided for abatement of devises and legacies to raise a portion for a child born to the testator for whom no provision was made. Section 14 provided when any devisee or legatee being a child or grandchild of the testator shall die before the testator, etc., the issue of such devisee or legatee shall take the estate devised or bequeathed. These and other instances forbid any inference that the Legislature used the words legacies and bequests in a broad sense intending to include devises; and it cannot be presumed that under the constitution, laws and practices of that time that it intended to confer on courts of probate, jurisdiction to in that manner deal with devises of real estate.

*Logan v. Logan,* 11 Colo. 44, is cited by counsel for appellants as holding on a statute identical with our Act of 1845 that devises are included in the terms "legacies and bequests." That court does reach the conclusion claimed, both by a process of reasoning and by reference to *Marvin v. Ledwith,* 111 Ill. 144, which it treats as deciding the question. We do not see that *Marvin v. Ledwith* warrants any such conclusion, and we find no other Illinois case supporting that view of the statute, and are of the opinion that appellants cannot invoke that act in support of their prayer that the five legatees be compelled to contribute from their legacies to idemnify the complainants their losses sustained by the election of the widow.

The inquiry must be whether in the absence of a statute controlling the question a court of equity will not only lay hold of devises and bequests renounced by the widow for the purpose of compensating disap-

pointed devisees and legatees but will also go further and marshal the entire assets of the estate and abate devises, legacies and bequests under principles similar to those controlling the reduction of legacies on account of the insufficiency of the estate of the testator to pay all his debts and legacies in full.

Appellees cite *Devecmon v. Kuykendall*, 89 Md. 25, as clearly determining the question. That case does hold that the loss to a devisee by the renunciation of the widow results "by operation of law," and the testator having failed to provide any change or substitution in the event of his widow's renouncing, the court cannot do it for him. This is certainly not the law in this State, at least so far as the property relinquished is concerned. *Gainer v. Gates*, 73 Iowa, 149, is also relied on. That was not a case to recover from the legatees or devisees, but from the administrator and heirs; the legatees and devisees were not before the court and the court expressly withheld its opinion as to the rights of such parties if claims were properly made and presented; the right to contribution and the doctrine of compensation was not discussed and the decision was placed upon other grounds. In the notes in L. R. A., vol. 14, page 293, after showing the general trend of authorities to the effect that the property rejected by the widow should be sequestered for the benefit of disappointed legatees, the annotator says that the case of *Gainer v. Gates, supra,* is one of two cases opposed to that line of authorities and that it is a peculiar case.

*Latta v. Brown*, 96 Tenn. 343, 31 L. R. A. 840, is authority for the position that a court will go further by way of compensating disappointed legatees and devisees, in case of election by the widow, than to deal with the property relinquished and that where that is not sufficient to supply the loss, others in the same

class must contribute. Other cases to same effect may be found and the rule is announced by some of the text writers, but an examination of many of the cases relied on to support the text discloses that the decisions were controlled by statute. The doctrine of abatement of legacies applied to a deficiency of assets caused by the election of the widow is stated in *Lewis v. Sedgwick, supra,* and it is there held that residuary and general legacies must first abate, but the court was there dealing with personal assets and grounded its decision on section 79 of our Administration Act. (J. & A. ¶ 128.) Other Illinois cases are found recognizing the same principle resting the decision on that section. Whether in case of loss to a devisee, occasioned by the election of the widow, other beneficiaries under the will should be treated as in case of devise of land that the testator did not own, and the disappointed devisee left without other remedy than compensation from the property, if any, which the owner of the land might be given by the will and compelled to relinquish; or whether a failure of the devise, because of the election of the widow to take her interest in the land devised instead of the provision in her favor in the will, should be treated as a disarrangement of the entire plan of the testator in distributing his property, and all the assets should be marshalled by a court of equity on the plan of equalization of legacies and bequests adopted by our legislature, is not so far as we can learn determined in this State. Whether the five defendant legatees, who we are inclined to hold under the language of the gifts to them, have specific legacies, should in the event of the application of such a rule be required to contribute to the exoneration of the disappointed devisees, or to contribute pro rata to the loss, is not clear on any authority we have found. We are of the opinion that the complainant devisees have no right of contribution from the defendant legatees; that they can claim no such right under the statute, or under any decision

of our Supreme Court; that other cases so far as cited by counsel or found by us, while not in entire harmony, do not warrant such equalization of devises and legacies, in the absence of a statute authorizing it, and therefore the trial court did not err in holding, as appellants counsel say he did, that the personal property of defendant legatees could not be compelled to pay or contribute to the loss of real estate by disappointed devisees.

There is left no ground for relief in the bill. The real estate relinquished by the widow has been disposed of in the case of *Dunshee v. Dunshee* before referred to. If there has been any improper disposition of personal property relinquished by her it is not shown by the bill.

The decree of the trial court is affirmed.

*Affirmed.*